948 A.2d 627

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. FRANKLIN JACK BURR, II, DEFENDANT–
RESPONDENT.

Argued March 10, 2008—Decided June 11, 2008.

*Simon Louis Rosenbach,* Assistant Prosecutor, argued the cause for appellant (*Bruce J. Kaplan,* Middlesex County Prosecutor, attorney).

*Vincent James Sanzone, Jr.,* argued the cause for respondent.

Justice LaVECCHIA delivered the opinion of the Court.

A jury convicted defendant, Franklin Jack Burr II, of second-degree sexual assault, *N.J.S.A.* 2C:14–2(b), and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a),[1] based on

---

[1] Defendant's indictment charged him with endangering the welfare of a child in the second degree, in violation of *N.J.S.A.* 2C:24–4(a).

allegations that he had touched inappropriately a young female student while teaching her piano. On appeal, defendant argued that his ability to defend against the charges was impaired because he was not permitted to introduce testimony from a medical expert who diagnosed him with Asperger's Disorder.[2] Defendant had wanted the expert to educate the jury about the disorder's traits and to provide it with a better understanding of defendant's unusual and, at times, odd demeanor and mannerisms, as well as his difficulty with interpersonal dealings. The Appellate Division agreed that the preclusion of that evidence constituted reversible error and vacated defendant's convictions. *State v. Burr*, 392 *N.J.Super.* 538, 560, 921 *A.2d* 1135 (2007). The Appellate Division also found error in the trial court's handling of the jury's request to have replayed for it, during deliberations, a videotaped pretrial interview of the child victim. *Id.* at 575–76, 921 *A.2d* 1135. In light of its reversal on other grounds, the panel did not address whether that separate error would have required reversal. *Id.* at 576, 921 *A.2d* 1135. We granted the State's petition for certification on both issues. 192 *N.J.* 478, 932 *A.2d* 28 (2007).

In our view, the evidentiary ruling on the Asperger's Disorder testimony denied defendant access to evidence that was relevant and material to his explanation of himself and his conduct. The resultant harm to defendant was palpable, even from the vantage point of appellate review of a cold record. We agree with the Appellate Division's assessment that the preclusion of this evidence was capable of impacting the jury verdict and that it was a

---

[2] Asperger's Disorder is an autism spectrum disorder characterized by a "severe and sustained impairment in social interaction ... and the development of restricted, repetitive patterns of behavior, interests, and activities." American Psychiatric Association, *Diagnostic & Statistical Manual of Mental Disorders* 75 (4th ed. 1994) (DSM–IV); *see also* National Institute of Neurological Disorders and Stroke, Asperger Syndrome Fact Sheet, *http://www.ninds.nih.gov/disorders/asperger/detail_asperger.htm* [hereinafter NINDS, *Fact Sheet*]. Persons with Asperger's Disorder often exhibit "socially and emotionally inappropriate behavior" and an "inability to interact successfully with peers." NINDS, *Fact Sheet, supra*. They have difficulty communicating with others and may not understand normal body language and gestures. *Ibid.*

factor in defendant's decision not to testify at trial. For substantially all these reasons that were set forth in Judge Weissbard's thorough and thoughtful opinion, we hold that the preclusion of the expert testimony constituted reversible error necessitating a new trial. We address separately the videotape replay issue and modify the instructions of the Appellate Division in the event that the issue recurs during retrial.

## I.

There is an unusual procedural history to the expert testimony evidentiary ruling at issue in this appeal.[3] Before the trial in this matter commenced, the trial court referred defendant to the Ann Klein Forensic Center for a competency evaluation when concerns arose over defendant's odd appearance and demeanor during a pretrial proceeding. While that referral took place, defense counsel had defendant evaluated by Dr. Richard Kleinmann, a psychiatrist. Dr. Kleinmann's evaluation led to a preliminary diagnosis of Asperger's Disorder, which was set forth in a report that was used in connection with a bail hearing. However, the diagnosis and report triggered a desire on defendant's part to introduce Dr. Kleinmann's testimony at trial. Dr. Kleinmann's testimony would include a discussion on the Asperger's diagnosis and characteristics of the disorder, as described in his report. Dr. Kleinmann also would testify about the serious difficulties in social interaction, as well as the odd, even bizarre, actions and mannerisms that can be common to persons who have the disorder.

The State moved in limine to preclude that expert testimony. Defense counsel urged the court to allow the testimony so defen-

---

[3] Our factual and procedural statement only summarizes the portions of the record that are pertinent to the resolution of this appeal. For a complete statement of the lower courts' proceedings, reference may be had to the Appellate Division's thorough recitation of the development of the record on the disputed expert testimony, as well as its comprehensive statement of the substance of the proffered testimony. *See Burr, supra,* 392 *N.J.Super.* at 549–55, 921 *A.2d* 1135.

dant could "show the jury a full picture of what it is that [he] is suffering from and why he may make inappropriate social judgments, not criminal judgments, but inappropriate social judgments." Although defendant never argued that the Asperger's Disorder evidence was intended to advance a diminished capacity defense, the trial court granted the State's motion to bar the testimony because it found that the testimony did not tend to prove that defendant had a mental defect that prevented him from understanding his actions. *See N.J.S.A.* 2C:4–2 (allowing admission of evidence of "mental disease or defect . . . whenever it is relevant to prove that the defendant did not have a state of mind which is an element of the offense").

The trial then proceeded, during which the alleged victim, A.A.,[4] who took piano lessons from defendant, testified that, on numerous occasions, defendant touched her "private parts" over her clothes. She also testified that defendant often pulled her onto his lap, although he did not touch her inappropriately at those times. Three other witnesses confirmed that defendant allowed children to sit on his lap. During summation, the prosecutor argued that defendant's purpose for allowing A.A. to sit on his lap was to "groom" her for sexual assault by making her feel comfortable when being held by him in a compromising position.

After the jury found defendant guilty of second-degree sexual assault, *N.J.S.A.* 2C:14–2(b), and third-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a), defendant appealed. The appellate panel initially issued an unpublished opinion that concluded that the record was inadequate to address the expert's report and Asperger's Disorder issue. Because Dr. Kleinmann's report had been used only in connection with the bail hearing, the report's author had not been subjected to cross-examination. Accordingly, the panel ordered a remand for a *Rule* 104 hearing to develop the record on the admissibility of the testimony. The

---

[4] The victim is identified by the same altered initials as were used by the Appellate Division.

appellate panel retained jurisdiction and, after the *Rule* 104 hearing concluded, issued its decision vacating defendant's convictions and remanding for a new trial. *Burr, supra,* 392 *N.J.Super.* at 560–63, 921 *A.*2d 1135. The panel determined that the trial court erred in basing its admissibility determination entirely on the fact that defendant had not raised a diminished capacity defense, instead of examining the evidence's admissibility under broader relevance concepts. *Id.* at 556–57, 921 *A.*2d 1135. Applying *Evidence Rule* 402, the panel held that the evidence was admissible because it was relevant to explain defendant's conduct and "to negate the inference that defendant allowed young children to sit on his lap with the purpose of grooming them for sexual abuse." *Id.* at 561, 921 *A.*2d 1135. The panel explained,

> The trial would have been a more fair and complete adversarial process if, in evaluating the evidence and the inferences urged by the State, jurors were aware that defendant's mental disability prevents him from viewing the world as others do in terms of acceptable social interactions.
>
> [*Ibid.*]

Because there was evidence that the jury was "clearly troubled" by the testimony that defendant allowed children to sit on his lap,[5] the panel concluded that the trial court's exclusion of evidence that would have "shed light on defendant's seemingly inappropriate behavior" constituted reversible error. *Id.* at 562, 921 *A.*2d 1135.

## II.

In addressing the issue presented in this appeal, we adopt an approach similar to that of the Appellate Division. . The essential inquiry into the admissibility of the expert medical testimony about Asperger's Disorder should focus on whether it constituted relevant evidence.

## A.

■ The New Jersey Evidence Rules broadly admit "all" relevant evidence, unless the evidence is otherwise excluded. *See*

---

[5] During deliberations, the jury posed to the trial court questions about that testimony. *See Burr, supra,* 392 *N.J.Super.* at 561–62, 921 *A.*2d 1135.

*N.J.R.E.* 402. *Rule* 401 defines "relevant evidence" as "evidence having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." *See State v. Jenewicz,* 193 *N.J.* 440, 457–58, 940 *A.*2d 269 (2008) ("Analyzing relevance requires examining the logical connection between the proffered evidence and a fact in issue." (internal quotation marks and citations omitted)). Courts consider evidence to be probative when it has a tendency "to establish the proposition that it is offered to prove." *State v. Allison,* 208 *N.J.Super.* 9, 17, 504 *A.*2d 1184 (App.Div.) (quoting *McCormick on Evidence* § 185 (3d ed.1984)), *certif. denied,* 102 *N.J.* 370, 508 *A.*2d 235 (1985); *see also State v. Williams,* 190 *N.J.* 114, 123, 919 *A.*2d 90 (2007) (holding that evidence is admissible if desired inference is rendered more probable or logical).

 Once a logical relevancy can be found to bridge the evidence offered and a consequential issue in the case, the evidence is admissible, unless exclusion is warranted under a specific evidence rule. *See, e.g., State v. Nelson,* 173 *N.J.* 417, 470, 803 *A.*2d 1 (2002); *State v. McDougald,* 120 *N.J.* 523, 577–78, 577 *A.*2d 419 (1990); *State v. Catlow,* 206 *N.J.Super.* 186, 193, 502 *A.*2d 48 (App.Div.1985), *certif. denied,* 103 *N.J.* 465–66, 511 *A.*2d 648 (1986). A reviewing court generally will defer to the trial court's admissibility rulings. *See Jenewicz, supra,* 193 *N.J.* at 456, 940 *A.*2d 269 (applying abuse of discretion standard of review).

### B.

 In this matter, the trial court's analysis of the relevance of Dr. Kleinmann's expert testimony was off target from its inception. In perceiving Kleinmann's testimony to be permissible only to establish a mental defect defense, which defendant was not asserting, the trial court employed an approach to analyzing the permissible uses of the testimony that was too narrow.

 *N.J.S.A.* 2C:4–2 allows admission of evidence of a "mental disease or defect . . . whenever it is relevant to prove that the

defendant did not have a state of mind which is an element of the offense." *See State v. Breakiron,* 108 *N.J.* 591, 607–09, 532 *A.*2d 199 (1987) (explaining that evidence of mental disease or condition is relevant when used to negate mental state required for offense). To be sure, mental defect evidence is relevant when asserted to prove or disprove an element of a crime or to advance a defense. *See, e.g., State v. Reyes,* 140 *N.J.* 344, 354–58, 658 *A.*2d 1218 (1995); *Breakiron, supra,* 108 *N.J.* at 607–09, 532 *A.*2d 199; *see also State v. Sexton,* 311 *N.J.Super.* 70, 88, 709 *A.*2d 288 (App.Div. 1998) (holding that defendant's special education placement was relevant to whether defendant had reckless state of mind), *aff'd,* 160 *N.J.* 93, 733 *A.*2d 1125 (1999). That said, evidence of mental defect, illness, or condition has been admitted also for other purposes, such as to assess credibility or otherwise evaluate the subjective perceptions of an actor. *See, e.g., State v. B.H.,* 183 *N.J.* 171, 201, 870 *A.*2d 273 (2005) (explaining that battered woman syndrome evidence is relevant to defendant's subjective assessment of perceived threat from abuser); *State v. King,* 387 *N.J.Super.* 522, 550, 904 *A.*2d 808 (App.Div.2006) (permitting psychiatric testimony about defendant's personality disorder as relevant to defendant's false confession claim); *State v. Johnson,* 216 *N.J.Super.* 588, 603, 524 *A.*2d 826 (App.Div.) (stating that evidence of witness's mental defects has "unquestionable relevance" in assessing credibility), *certif. denied,* 107 *N.J.* 647, 527 *A.*2d 467 (1987). Here, the Appellate Division correctly recognized that the trial court's focus on whether the disputed evidence was relevant to a diminished capacity defense distracted the court from examining the evidence under general relevance concepts. *See Burr, supra,* 392 *N.J.Super.* at 557, 921 *A.*2d 1135.

In this matter, defense counsel knew before the trial commenced that the State would call several witnesses to testify that defendant had permitted A.A. and another child to sit on his lap. In anticipation that that testimony could arouse the jury's suspicion, the defense proffered Kleinmann's testimony, which would have helped to explain how defendant's actions in allowing children to sit on his lap might have been innocent of a nefarious

purpose or motivation. The conduct, although minimal, was, however, potentially suspicious. The Asperger's Disorder testimony was intended to show that defendant might not have understood that his conduct could have been perceived as socially unacceptable. In seeking to educate the jury about Asperger's Disorder, defendant sought to provide the jurors with context about him and his limitations in respect of basic social interactions.[6] However, defendant was denied the opportunity to introduce the evidence, and the witnesses testified as expected about other incidents of lap-sitting. During summation, the State highlighted that testimony and contended that defendant sat A.A. on his lap in order to "groom" her for sexual assault.

Although the "grooming" comment arose well after the evidentiary issue had been resolved by the trial court, on appeal defendant contended, persuasively, that the Asperger's Disorder expert testimony would have assisted the defense by rebutting the State's assertion that defendant manipulated his youthful charge. The expert would have testified to the effect that persons with Asperger's Disorder generally do not have the ability to manipulate people easily because of their weakness in detecting social cues that other persons readily recognize. Thus, in two ways the Asperger's Disorder evidence was relevant to provide an explanation for defendant's noncriminal behavior (of allowing children to sit in his lap) that the jury might otherwise consider consistent with common assumptions about sexual abuse. *Cf. State v. P.H.,* 178 *N.J.* 378, 395, 840 *A.*2d 808 (2004) (allowing expert testimony concerning Child Sexual Abuse Accommodation Syndrome (CSAAS) to explain behavior that might be counter-intuitive to jury).

---

[6] This Court previously has recognized that persons suffering from Asperger's Disorder have an incapacity for socialization that can be both " 'serious and debilitating.' " *T.H. v. Div. of Developmental Disabilities,* 189 *N.J.* 478, 486, 916 *A.*2d 1025 (2007) (quoting Ami Klin & Fred R. Volkmar, *Asperger's Syndrome: Guidelines for Assessment and Diagnosis* (Learning Disabilities Association of America 1995), *http://www.med.yale.edu/chldstdy/autism/asdiagnosis.pdf* (source no longer available online)).

Beyond offering an alternative explanation for defendant's conduct, the barred testimony would have enhanced the presentation of defendant's defense to the charges against him in ways that defy specific enumeration. The evidence would have educated the jury about oddities in behavior that defendant might exhibit in court or were described in the testimony of witnesses. The testimony also might have enabled the jury to view the facts with greater consideration given to defendant's version of his interactions with the children. In the same vein, the testimony might have persuaded defendant to take the stand and testify before the jury, knowing that any odd behaviors or demeanor that he might exhibit would not surprise or inexplicably alienate the jury. This was defendant's only opportunity to present his defense to the jury, and he deserved a more generous grant of the trial court's discretionary evidentiary rulings on any relevant evidence that had a logical tendency to advance defendant's cause in the matter. To the extent that defendant wanted to present the whole person that he was to the jury, in whose hands his fate was placed, he should have been permitted to do so.

■ We hold therefore that the trial court abused its discretion by failing to consider larger relevancy concepts when evaluating this testimony. Had it done so, it should have concluded that the evidence was relevant to defendant's defense. The only remaining question is whether the Appellate Division correctly concluded that defendant was prejudiced by that error. The harmful error standard applies here because defendant raised the issue before the trial court. *R.* 2:10–2. In our view, it is plain that the error caused prejudice to defendant and was of the kind that was "capable of producing an unjust result." *Ibid.*

As noted, the jury heard testimony from four witnesses about how defendant allowed children to sit on his lap. During deliberations, the jury demonstrated that it was troubled by that testimony when it requested a readback of portions from two witnesses' testimony that had referred to defendant having allowed another child to sit on his lap. Further, the State emphasized this point to

the jury, claiming that defendant's actions in having A.A. sit in his lap were intended to "groom" his targeted victim for sexual abuse. The exclusion of the Asperger's Disorder evidence, which would have offered an explanation for defendant's seemingly socially inappropriate behavior, was capable, therefore, of influencing the jury's verdict.

In conclusion, we hold that the Appellate Division correctly vacated defendant's convictions and remanded for a new trial because defendant was prejudiced by the trial court's error. On remand, we further hold that defendant must be permitted to introduce expert testimony on Asperger's Disorder to defend against any allegation of "grooming" his victim that the State may advance, as well as to explain himself and his actions to the jury regardless of whether the State pursues its "grooming" theory. The testimony is equally relevant to defendant's efforts to have the jury understand any unusual demeanor or mannerisms he may have as a result of the Asperger's Disorder and to explain his asserted shortcomings in perceiving and reacting to basic inter-personal cues when engaging in social interactions. He must be permitted the opportunity to present at trial evidence that tends to prove that he has a medical basis for such behaviors in order to explain himself and his condition and, thereby, to lessen the chance of being misunderstood by the jury.

## III.

After A.A. testified, the State proffered a videotape of her pretrial interview with the Middlesex County Prosecutor's Office's Sex Crimes and Child Abuse Unit. Over defendant's vigorous objections, the trial court admitted the evidence pursuant to the "tender years" exception to the hearsay rule.[7] *N.J.R.E.* 803(c)(27). Later, when the jury was deliberating, it requested

---

[7] Defendant argued that the videotape was inadmissible because it did not meet the threshold requirement of trustworthiness required for admission under *Rule* 803(c)(27), because it was prejudicial pursuant to *Rule* 403, and because it

permission to review the videotape. The trial court granted the request, over defendant's objection, and replayed the videotape for the jury in the courtroom.

On appeal, the Appellate Division held that the trial court abused its discretion in permitting a replay of the videotape without "inquir[ing] into the jury's need for a video replay and balanc[ing] that need against any resulting prejudice." *Burr, supra,* 392 *N.J.Super.* at 576, 921 *A.*2d 1135 (citing *State v. Michaels,* 264 *N.J.Super.* 579, 644–45, 625 *A.*2d 489 (App.Div. 1993), *aff'd on other grounds,* 136 *N.J.* 299, 642 *A.*2d 1372 (1994)).

## A.

The issue of whether a taped pretrial statement, which has been introduced into evidence, may be reviewed by the jury during deliberations has never before been decided by our courts. In resolving this novel issue, the Appellate Division panel relied on the closest analogy that it could find, namely *State v. Michaels,* 264 *N.J.Super.* 579, 625 *A.*2d 489 (App.Div.1993), *aff'd on other grounds,* 136 *N.J.* 299, 642 *A.*2d 1372 (1994), which examined the related issue of the replay of a witness's videotaped trial testimony. *Burr, supra,* 392 *N.J.Super.* at 574, 921 *A.*2d 1135.

In *Michaels, supra,* the defendant was tried for multiple counts of sexual assault against numerous children. 264 *N.J.Super.* at 585, 625 *A.*2d 489. Because of the children's young ages, they testified via closed circuit television. *Id.* at 642–43, 625 *A.*2d 489. Although a transcript of the testimony was entered into evidence, the video was not. *Ibid.* (citing *N.J.S.A.* 2A:84A–32.4). During deliberations, the trial court granted the jury's request to review the tapes of the children's testimony. The defendant appealed, arguing that it was unfair to allow the jury to review videotaped testimony of the alleged victims when the jury could only receive a

---

implicated his Confrontation Clause rights. The trial court rejected all of those arguments, and the Appellate Division affirmed. *Burr, supra,* 392 *N.J.Super.* at 565–73, 921 *A.*2d 1135. Because defendant has not raised those issues in the instant appeal, we do not address them.

readback of the defendant's transcribed testimony. *Id.* at 642, 625 *A.*2d 489.

On review, the Appellate Division distinguished the playback of videotaped testimony from the readback of transcribed testimony. *Id.* at 643, 625 *A.*2d 489. It noted that "videotape evidence is unique" because it allows jurors to observe the witness's demeanor while hearing the testimony again. *Ibid.* (quoting *United States v. Binder,* 769 *F.*2d 595, 600–01 (9th Cir.1985)). The panel further recognized that

> a video replay . . . presents much more information than does a transcript reading. In essence, the witness is brought before the jury a second time, after completion of the defense['s] case, to repeat exactly what was testified to in the State's case. The witness' words and all of the animation, passion, or sympathy originally conveyed are again presented to the jury. It is difficult to deny that there is an advantage that may be gained in such circumstances.
> [*Id.* at 644, 625 *A.*2d 489.]

The *Michaels* panel concluded that juries should not have unrestricted access to the videotape in the jury room. *Ibid.* However, the replay, at the jury's request, of videotaped testimony, in its entirety and in open court, is not per se prejudicial and must be subject to judicial discretion. *Id.* at 644, 625 *A.*2d 489. The panel directed the trial court to take precautions before replaying the testimony to the jury to reduce the risk that the jury would unduly emphasize the videotaped testimony. Specifically, the trial court was cautioned first to inquire whether the jurors are seeking something from the video that they cannot get from an impartial readback of the transcribed testimony. *Id.* at 644–45, 625 *A.*2d 489. If the request for a replay appears reasonably necessary to the jury's deliberations, the trial court should then exercise its discretion to balance that need against any possible prejudice to the defendant. *Ibid.*

### B.

This case, however, is distinguishable from *Michaels* because the videotape at issue was admitted into evidence as an exhibit. Generally, once an exhibit has been admitted into evidence, the jury may access it during deliberations, subject to the

court's instructions on its proper use. *R.* 1:8–8; *Fiorino v. Sears Roebuck & Co.*, 309 *N.J.Super.* 556, 567–69, 707 *A.*2d 1053 (App. Div.1998) (holding that judge could, with proper instructions, permit shredder-bagger, screen, and screwdriver into jury room); *State v. Pemberthy*, 224 *N.J.Super.* 280, 302–03, 540 *A.*2d 227 (App.Div.) (holding that decision whether to allow bag of cocaine into jury room is matter for court's discretion), *certif. denied*, 111 *N.J.* 633, 546 *A.*2d 547 (1988).

■ The videotaped pretrial statement at issue in this appeal is, however, significantly different from a demonstrative exhibit. Although it is evidence, it is also testimony. It is, in effect, a hybrid of the two. Unlike a demonstrative exhibit, the videotape contains hearsay statements offered for the truth of the matter asserted. Moreover, the videotape is powerful evidence for the jury to see again, if it is not placed into context. We therefore share the Appellate Division panel's concern that allowing a jury unfettered access to videotaped witness statements could have much the same prejudicial effect as allowing a jury unrestricted access to video-taped testimony during deliberations. The danger posed is that the jury may unfairly emphasize A.A.'s videotaped statements over other testimony presented at trial, including her own cross-examination. That said, we note that the trial court had before it in this matter a broad request from the deliberating jury. The jury asked to hear all of the victim's testimony and her videotape. Because we are reversing based on the expert-testimony issue, there is no need for us to overanalyze what the trial court did here in the face of the broad request made of it. We simply hold that, in the future, if a request is made by a jury to replay a videotaped pretrial interview that has been introduced into evidence, the precautionary procedures adopted in *Michaels* must apply to the videotaped out-of-court statements.[8] The rule we adopt today reflects the unique nature of this videotape evidence.

---

[8] We note that, when faced with a similar issue, the highest courts of Florida and Wyoming have reached similar conclusions. *See Young v. State*, 645 *So.*2d 965, 967–68 (Fla.1994); *Chambers v. State*, 726 *P.*2d 1269, 1276 (Wyo.1986).

To summarize, if on remand the trial court is faced with a request by the jury to have a replay of the videotaped pretrial interview of A.A., the court first should inquire of the jury whether it would be satisfied with a readback of A.A.'s testimony. If the jury persists in its request to view the videotape again, then the court must take into consideration fairness to the defendant. The court must determine whether the jury must also hear a readback of any direct and cross-examination testimony that the court concludes is necessary to provide the proper context for the video playback.[9] Furthermore, we reiterate that the court retains the ultimate discretion to deny the playback request, although that would require a showing that the consequential prejudice to the defendant from the playback could not be ameliorated through other means. And, finally, any playback of the videotape must occur in open court, along with the readback of related testimony that the court shall require.

## IV.

We affirm the judgment of the Appellate Division, as modified by this opinion. Defendant's convictions are vacated and this matter is remanded for retrial.

*For affirmance as modification/vacation and remandment—* Justices LONG, LaVECCHIA, ALBIN, WALLACE, RIVERA-SOTO and HOENS—6.

*Not Participating—*Chief Justice RABNER.

---

[9] Indeed, because this particular videotape contained hearsay testimony admitted pursuant to the tender-years hearsay exception, we think it imperative that the victim's related cross-examination at trial also be read back to the jury.