**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4299-15T4
                       A-4350-15T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

ESTERLIN M. TORRES

    Defendant-Appellant.

_____

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

JONATHAN TORRES,

    Defendant-Appellant.

_____

          Argued February 26, 2018 — Decided August 21, 2018

          Before Judges Ostrer and Rose.

          On appeal from Superior Court of New Jersey,
          Law Division, Camden County, Indictment No.
          09-09-3185.

          Louis H. Miron argued the cause for appellant
          Esterlin M. Torres.

Steven M. Gilson argued the cause for appellant Jonathan Torres.

Kevin J. Hein, Assistant Prosecutor, argued the cause for respondent (Mary Eva Colalillo, Camden County Prosecutor, attorney; Kevin J. Hein, of counsel and on the brief).

Appellants filed pro se supplemental briefs.

PER CURIAM

Defendants Esterlin and Jonathan Torres appeal from the denial of their petitions for post-conviction relief (PCR) without an evidentiary hearing. The brothers raise substantially similar arguments in their collateral challenges to their convictions for kidnapping, aggravated assault and related crimes. Defendants assert they received ineffective assistance of trial and appellate counsel. We consolidate their appeals for this opinion, and affirm in part, reverse in part and remand for an evidentiary hearing.

I.

We presume familiarity with the facts, which we extensively reviewed in our opinions affirming the convictions on direct appeal, State v. Torres, No. A-4500-09 (App. Div. Feb. 14, 2012) (Torres I), and on motions for reconsideration, State v. Torres, No. A-4500-09 (App. Div. Aug. 7, 2013) (Torres II).

In Torres II, we declined to address defendants' newly-minted claims of trial court error, because they failed to raise those before the trial court or in their direct appeal. See Torres II,

slip op. at 13-15. Specifically, defendants argued the trial court erred by: (1) granting the jury unfettered access in the jury room to Joshua Calero's incriminating videotaped statement; (2) giving the jury a dictionary definition of "substantial" in response to a jury question about the legal meaning of the word with respect to the kidnapping charge; and (3) failing to give a unanimity charge to assure that all jurors agreed as to the asportation or confinement element of kidnapping. Id. at 13. We commented that whether the trial and appellate counsel were ineffective in not raising those points of error was not before us to decide. Id. at 17.

That issue is before us now. In their PCR petitions, defendants contend their trial and appellate counsel were deficient in failing to raise those three issues. They also contend that trial and appellate counsel were ineffective because they did not challenge ex parte contacts between the judge and the jury, and the court's failure to conduct an arraignment-status conference after a superseding indictment was returned.

The PCR court rejected defendants' petition as a mere reframing of the Torres II claims "couch[ed] . . . in terms of ineffective assistance of counsel." The PCR court held that Rules 3:22-3 and -4 barred defendants' claims, because defendants could have raised them on direct appeal. The court also inferred that

we deemed defendants' claims to lack merit, because we declined to address them.

Defendants now appeal from the PCR court's decision. With minor wording and numbering variations, they raise the following identical issues (quoting from Jonathan's counseled brief to avoid repetition):

> POINT I
>
> THE PCR COURT ERRED BY PROCEDURALLY BARRING DEFENDANT'S INEFFECTIVE ASSISTANCE OF COUNSEL CLAIMS.
>
> POINT II
>
> TRIAL AND APPELLATE COUNSEL DEPRIVED DEFENDANT OF EFFECTIVE ASSISTANCE OF COUNSEL.
>
>> A. Trial Counsel/Initial Appellate Counsel Failed To Object/Raise The Trial Court's Allowing The Jury To Have Unfettered Access To Joshua Calero's Video-Recorded Statement In The Jury Room; Therefore, The Aggravated Assault Convictions Regarding Calero Must Be Reversed Or, In The Alternative, Defendant Must Be Afforded An Evidentiary Hearing Because He Established A Prima Facie Case Of Counsels' Ineffectiveness.
>>
>> B. Trial Counsel/Initial Appellate Counsel Failed To Object/Raise The Trial Court's Erroneous Kidnapping Charge Regarding The Definition Of "Substantial"; Therefore, Defendant's Kidnapping Convictions Must Be Reversed Or, In The Alternative, Defendant Must Be Afforded An Evidentiary Hearing Because He Established A Prima Facie Case Of Counsels' Ineffectiveness.

4

C.    Trial Counsel/Initial Appellate Counsel Failed To Object/Raise The Need For A Specific Unanimity Charge Regarding Kidnapping; Therefore, Defendant's Kidnapping Convictions Must Be Reversed Or, In The Alternative, Defendant Must Be Afforded An Evidentiary Hearing Because He Established A Prima Facie Case Of Counsels' Ineffectiveness.

D.    Trial Counsel/Appellate Counsel Failed To Object/Raise The Trial Court's Ex Parte Communications With The Jury; Therefore, Defendant's Convictions Must Be Reversed Or, In The Alternative, Defendant Must Be Afforded An Evidentiary Hearing Because He Established A Prima Facie Case Of Counsels' Ineffectiveness.

E.    Trial Counsel/Appellate Counsel Failed To Request/Raise The Need For An Arraignment/Status Conference Regarding The Superseding Indictment; Therefore, Defendant's Convictions Must Be Reversed Or, In The Alternative, Defendant Must Be Afforded An Evidentiary Hearing Because He Established A Prima Facie Case Of Counsels' Ineffectiveness.

POINT III

TRIAL AND APPELLATE COUNSELS' CUMULATIVE ERRORS MANDATE THAT DEFENDANT'S CONVICTIONS BE REVERSED OR, IN THE ALTERNATIVE, THAT DEFENDANT BE AFFORDED AN EVIDENTIARY HEARING.[1]

---

[1] Point II(E) of Jonathan's brief appears as Point III in Esterlin's brief; and Point III of Jonathan's brief appears as Point IV in Esterlin's brief.

A-4299-15T4

Esterlin raises the following additional point, numbered Point II(E) of his counseled brief:

> The Trial Court Abused Its Discrepion [sic] In Denying Esterlin's Motion to Interview The Trial Jurors Which Would Have Enabled The PCR Court To Determine The Substance Of The Trial Judge's Ex Parte Communications With The Jurors And Each Of The Juror's Perception Of The Trial Judge's Communications.

In supplemental pro se briefs, the brothers argue:

> POINT I
>
> THE PCR COURT'S FINDINGS SUMMARILY DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED AND THIS CASE SHOULD BE REVERSED AND REMANDED FOR A NEW TRIAL, BECAUSE APPELLATE COUNSEL WAS INEFFECTIVE IN FAILING TO PROVIDE THE APPELLATE DIVISION A COMPLETE RECORD WITH RESPECT TO EX-PARTE COMMUNICATIONS BETWEEN THE TRIAL JUDGE AND A DELIBERATING JURY, INCLUDING UNRECORDED TELEPHONE DISCUSSIONS WITH THE JURORS, FROM THE JUDGE'S PERSONAL HOME PHONE.
>
>> A. THE PCR COURT'S FINDINGS SUMMARILY DENYING POST-CONVICTION RELIEF SHOULD BE REVERSED AND THIS CASE SHOULD BE REVERSED AND REMANDED FOR A NEW TRIAL, BECAUSE TRIAL COUNSEL AND INITIAL APPELLATE COUNSEL WERE INEFFECTIVE IN FAILING TO (1) OBJECT TO THE TRIAL COURT'S EX-PARTE COMMUNICATIONS, (2) REQUEST TO VOIR DIRE THE JURORS, AND (3) RAISE THIS SIGNIFICANT ISSUE ON DIRECT APPEAL.
>>
>> B. THE PCR COURT'S RULING DENYING POST CONVICTION RELIEF SHOULD BE REVERSED AND THIS CASE SHOULD BE REVERSED AND REMANDED FOR A NEW TRIAL, BECAUSE PETITIONER WAS DEPRIVED OF HIS CONSTITUTIONAL RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL, A PUBLIC TRIAL BY AN IMPARTIAL JURY AND DUE

6

PROCESS UNDER THE UNITED STATES
CONSTITUTION AND THE NEW JERSEY
CONSTITUTION.

## II.

As the trial court declined to hold an evidentiary hearing, we review defendants' PCR petitions de novo. See State v. Harris, 181 N.J. 391, 421 (2004). We consider the facts in the light most favorable to defendants. See State v. Porter, 216 N.J. 343, 354 (2013); R. 3:22-10(b).

### A.

Addressing defendants' first point on appeal, we agree their ineffective assistance of counsel claims are not procedurally barred by Rules 3:22-3 and -4. Defendants allege the points of error were not raised at the trial or appellate level because their counsel failed to provide them with minimally effective assistance of counsel, as guaranteed by the Constitution. Notably, in response to defendants' new points of trial error, first raised in their petition for certification, the State argued they were "best raised" in a PCR petition. Torres II, slip op. at 6.

"Under New Jersey case law, petitioners are rarely barred from raising ineffective-assistance-of-counsel claims on post-conviction review." State v. Preciose, 129 N.J. 451, 459 (1992). Although defendants could have raised the underlying trial errors in the proceedings resulting in the conviction, see R. 3:22-4,

they could not have raised their attorneys' ineffectiveness to present those errors. "Our courts have expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." <u>Preciose</u>, 129 N.J. at 460. Consequently, "[i]neffective-assistance-of-counsel claims are particularly suited for post-conviction review because they often cannot reasonably be raised in a prior proceeding." <u>Ibid.</u> (citing <u>R.</u> 3:22-4).

We have previously explained that ineffective assistance of counsel claims are not barred by <u>Rule</u> 3:22-4:

> [I]neffective assistance of counsel claims, particularly ineffective assistance of appellate counsel, are congruous with the exceptions to the procedural bar of <u>R.</u> 3:22-4 because they (1) implicate issues that could not have been reasonably raised in prior proceedings; (2) involve infringement of constitutional rights; or (3) present exceptional circumstances involving a showing of fundamental injustice.
>
> [<u>State v. Moore</u>, 273 N.J. Super. 118, 125 (App. Div. 1994).]

Furthermore, although <u>Rule</u> 3:22-3 provides that a PCR proceeding "is not . . . a substitute for appeal from conviction," it has been observed that "such claims as ineffective assistance of trial counsel are ordinarily not barred by this rule since direct appeal does not provide an appropriate remedy." Pressler & Verniero,

Current N.J. Court Rules, cmt. on R. 3:22-3 (2018) (citing Preciose).

In sum, defendants' ineffective assistance of counsel claims are not procedurally barred.

The court also misinterpreted as a decision on the merits, our previous refusal to address points of error that were not timely raised. Although the trial court correctly observed that we have the discretion to address issues sua sponte, we generally decline to do so. See State v. Arthur, 184 N.J. 307, 327 (2005) (stating appellate courts should be "hesitant to raise an issue sua sponte that the parties have not had an opportunity to address"). Consequently, our recognition of the unanimity charge issue on direct appeal, see Torres I, slip op. at 41 n.9, did not imply we decided it lacked merit. Nor did we imply a negative view of the Calero video issue. See Torres II, slip op. at 16 n.6. We simply declined to decide the issues.

We also part company with the PCR court's conclusion that defendants' petitions were barred because they failed to comply with Rule 3:22-10(c), which requires that "[a]ny factual assertion that provides the predicate for a claim of [PCR] must be made by an affidavit or certification pursuant to Rule 1:4-4 and based upon personal knowledge of the declarant . . . ."

Each defendant verified the allegations in his PCR petition, stating, "I . . . have reviewed the allegations of the above [PCR] Petition and do verify upon my personal knowledge that they are true and correct." That sufficed as a verification. See Monmouth Cnty. Div. of Social Servs. v. P.A.Q., 317 N.J. Super. 187, 193 (App. Div. 1998) (describing form of verification required by Rule 1:4-7). Rule 1:4-4(b) prescribes the wording of a certification "[i]n lieu of the affidavit, oath or verification" required by these rules . . . ." (Emphasis added). Although defendants did not submit an "affidavit or certification pursuant to Rule 1:4-4," R. 3:22-10(c), their technical non-compliance does not justify rejection of their petitions. See State v. Jones, 219 N.J. 298, 312-13 (2014) (rejecting State argument that technical non-compliance with Rule 3:22-10(c) justified rejecting petition); State v. Brewster, 429 N.J. Super. 387, 396 (App. Div. 2013) (considering facts presented in petition as if "they had been properly presented by means of a sworn statement").

B.

In reviewing the merits of defendants' petitions, we apply the familiar two-pronged Strickland standard. Strickland v. Washington, 466 U.S. 668, 687 (1984); State v. Fritz, 105 N.J. 42, 52 (1987). To establish a prima facie case of ineffective assistance of counsel, defendants must show their counsel's

performance "fell below an objective standard of reasonableness," and "the deficient performance prejudiced the defense." Strickland, 466 U.S. at 687-88. Prejudice is defined as a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The right to effective assistance" includes that of appellate counsel, and the same Strickland test applies to claims that such assistance was denied. State v. O'Neil, 219 N.J. 598, 610-11 (2014).

We consider first whether trial and appellate counsel were ineffective in failing to object to, or to raise on appeal, the court's use of a dictionary definition of "substantial" in responding to a jury question about kidnapping. We conclude that defendants have established a prima facie case of ineffective assistance of counsel, warranting a remand for an evidentiary hearing.

The jury convicted defendants of three counts of kidnapping — one count for each occupant in Fabian Muniz's vehicle, including Muniz. The State presented evidence that defendants, while one possessed a gun, jumped into Muniz's car at 40th Street in Camden after shooting at Calero; instructed Muniz to drive until they told him to stop; and ultimately got out at 36th Street. Torres I, slip op. at 6-8. The jury had to decide whether defendants,

with the purpose "[t]o facilitate the commission of any crime or flight thereafter," unlawfully removed the victims a "substantial distance" or confined them for a "substantial period." See N.J.S.A. 2C:13-1(b)(1) (defining kidnapping).

In its initial instructions to the jury, the trial judge relied on the model charge on kidnapping. The charge instructs that if the victim is not unlawfully removed from his or her home or business, then the State must prove that the victim was moved a "'substantial distance' from the vicinity from which the victim was removed," or was unlawfully confined for a "substantial period." Model Jury Charge (Criminal), "Kidnapping (N.J.S.A. 2C:13-1(b)(1) to (3))" (2007).

The model charge further explains that a "'substantial distance' is not measured in feet, yards, or miles, nor by any other standard of linear measurement. Rather, a 'substantial distance' is significant, in that it is more than incidental to the underlying crime and substantially increases the risk of harm to the victim." Ibid. The charge also explains that a "'substantial period' is not measured in seconds, minutes, or hours, nor by any other standard based strictly on the passage of time." Ibid. Like a "substantial distance," a "'substantial period' is one that is significant, in that it is more than

A-4299-15T4

incidental to the underlying crime and substantially increases the risk of harm to the victim." Ibid.

The court, reading the instruction to the jury, informed the jurors that the "increased risk of harm must not be trivial." Thus, the court continued, "If the victim is removed only a slight distance from the vicinity from which he or she was removed and such movement does not create the isolation and increased risk of harm that are at the heart of the kidnapping statute, then you should not convict the defendant of the kidnapping charge." Likewise, "[i]f the victim is confined for only a slight period of time and such confinement does not create the isolation and increased harm that are at the heart of kidnapping statute, then you should not convict the defendant of the kidnapping charge."

During deliberations, the jury asked the court whether it could "look up word in dictionary, legal definition of substantial." Unable to find a definition in Black's Law Dictionary, the judge — with defense counsel's consent — first proposed to inquire whether the jury sought the definition with a particular instruction in mind; and absent such clarification, to read the first definition of "substantial" from Merriam Webster's Collegiate Dictionary (10th ed. 1993). However, before giving the jury a chance to respond to his inquiry, the judge proceeded to supply the dictionary definition: "[T]he primary definition of the

13                                                  A-4299-15T4

word 'substantial' is as follows: 'Consisting of or relating to substance; not imaginary or illusory.'" The judge then repeated the definition.[2]

Reflecting continuing difficulty, the jury submitted another note, stating that it needed the definition of "substantial" to answer the jury verdict sheet's questions on kidnapping. In response, the judge repeated the model jury charge, but then concluded by reciting the dictionary definition again, stating, "because I believe that may be helpful." Defendants' trial attorneys did not register an objection, and their appellate attorneys did not challenge the trial court's instruction on direct appeal.

We conclude the trial judge erred in using the dictionary definition of "substantial." It deviated from the model charge and prevailing case law on the elements of kidnapping, and diluted the nature of proofs required of the State.

As noted, asportation for a "substantial distance," or confinement for a "substantial period" is an essential element of kidnapping, if removal is not from the home or business. N.J.S.A.

---

[2] Although the model charge equates "substantial" with "significant," the court omitted the third dictionary definition, which states: "**3 . . . b:** considerable in quantity : significantly large . . . ." <u>Merriam Webster's Collegiate Dictionary</u> (10th ed. 1993).

2C:13-1(b); see also State v. Jackson, 211 N.J. 394, 414 (2012) (discussing elements of "non-ransom kidnapping"). The meaning of "substantial" is critical. "The crime of kidnapping sounds simple, but . . . defining it 'is a task of special subtlety.'" State v. La France, 117 N.J. 583, 586 (1990) (quoting Model Penal Code § 212.1 at 221 (Official Draft and Revised Comments) (1980)).

In State v. Masino, 94 N.J. 436 (1983), the Court considered whether "substantial distance" should be defined in linear or qualitative terms. Finding a "substantial distance" is "one that isolates the victim and exposes him or her to an increased risk of harm," the Court determined it was distinct from the linear measurement of the distance a victim may have travelled during his or her confinement. Id. at 445-46.

In assessing whether a victim has been removed a "substantial distance from the vicinity where he is found," a jury necessarily must also define the "vicinity" under the facts of the case. A vicinity is not a fixed point; it is a less well-defined area. The statute requires that a victim "be moved from the 'vicinity,' rather than the 'place' where he is found so as 'to preclude kidnapping convictions based on trivial changes of location having no bearing on the evil at hand.'" Id. at 445 (quoting Model Penal Code § 212.1 cmt. at 16 (Tentative Draft No. 11 (1960)).

In La France, the Court addressed the confinement element, stating that a "substantial period" is "criminally significant in the sense of being more than merely incidental to the underlying crime," considering "not only . . . the duration of the confinement, but also . . . the 'enhanced risk of harm resulting from the [confinement] and isolation of the victim [or others].'" 117 N.J. at 594 (quoting Masino, 94 N.J. at 447). In reference to both asportation and confinement, the "enhanced risk [to the victim] must not be trivial." Ibid.; Masino, 94 N.J. at 447. As "not every movement or confinement of a victim is a kidnapping," La France, 117 N.J. at 586, the nature of the confinement of the victims in this case was of great importance. See also Jackson, 211 N.J. at 418-19 (affirming conviction on both asportation and confinement grounds, where defendant pointed a gun at a taxi driver's chest and forced him to drive eight-tenths of a mile in a city).

Our Supreme Court has held that "[t]he jury should be instructed that if the victim is removed only a slight distance from the vicinity where he or she is found and such movement does not create the isolation and increased risk of harm that are at the heart of N.J.S.A. 2C:13-1(b), then it should not convict." Masino, 94 N.J. at 447. The model charge complies with this direction, and includes a similar direction with respect to a

"victim . . . confined for only a slight period of time and such confinement does not create the isolation and increased risk of harm that are at the heart of the kidnapping statute . . . ." Model Jury Charge (Criminal), "Kidnapping (N.J.S.A. 2C:13-1(b)(1) to (3))".

Notwithstanding this established authority, the court instructed the jury three times that "substantial" meant merely "not imaginary or illusory." Any measurable distance or period, trivial or significant, would meet that definition of "substantial." Thus, by that definition, asportation of any distance, or confinement for any period of time, would satisfy essential elements of the offense.

Given the court's clear error, defendants have met their prima facie burden under Strickland's two prongs to establish that both trial and appellate counsel were deficient in failing to object and to raise the issue on appeal, and that defendants suffered prejudice.

As for the first prong, on this record, we can fathom no strategic reason for trial counsel's acquiescence in the court's use of the "not imaginary or illusory" formulation. The definition was contrary to the established caselaw and the model charge, and weakened the State's burden. Although an appellate advocate is not obliged to challenge every aspect of defendants' trial, O'Neil,

219 N.J. at 612, a clearly erroneous jury instruction is often a fruitful avenue for appeal, given the oft-stated principle that "[e]rroneous instructions are poor candidates for rehabilitation as harmless, and are ordinarily presumed to be reversible error." State v. Afanador, 151 N.J. 41, 54 (1997); see also State v. McKinney, 223 N.J. 475, 495-96 (2015); State v. Bunch, 180 N.J. 534, 541-42 (2004); State v. Jordan, 147 N.J. 409, 422-23 (1997).

As for the second prong, as just noted, erroneous jury charges are presumed to be reversible error, particularly when they pertain to essential elements of a crime. See State v. Koskovich, 168 N.J. 448, 508 (2001) (stating the Court has "consistently held that incorrect charges on substantive elements of a crime constitute reversible error" (quoting State v. Rhett, 127 N.J. 3, 7 (1992))). The evidence in support of the substantial distance and substantial confinement elements in this case was strong, but not overwhelming. Concededly, there was evidence that Jonathan pointed a gun at Muniz's back, much like the defendant who pointed the gun at the victim's chest in Jackson, 211 N.J. at 418-19. See Torres I, slip op. at 6. Also, another car soon started following Muniz. Id. at 7. Such evidence could support a finding that defendants exposed Muniz and his two friends to "an enhanced risk of harm." Jackson, 211 N.J. at 419.

Despite this evidence, the jury obviously struggled with the concept of substantial distance and substantial time as expressed in the model charge. We reject the State's argument that delivery of the model charge rendered the dictionary definition insignificant. The model charge puzzled the jury. Rather than amplify or explain the concepts in the model charge, the dictionary definition contradicted them.

The jury may have been unconvinced that defendants pointed a gun, or that Muniz and the others faced an increased risk of harm. Notably, Muniz gave a statement, later disavowed, that he told defendant they could get in his car. Torres I, slip op. at 11. Calero alleged in one statement that Muniz was defendant's getaway driver. Id. at 9. Muniz admitted defendants were not strangers. Id. at 12. Muniz and his passengers were taken just a few blocks. The jury may also have expansively viewed the "vicinity" from where they were removed. Significantly, the jury acquitted defendants of carjacking, declining to find that defendants threatened the occupants of the vehicle or purposely or knowingly put an occupant or driver in fear of immediate bodily injury in the course of committing the unlawful taking of a motor vehicle. See N.J.S.A. 2C:15-2 (defining carjacking).

We conclude defendants have made a prima facie showing that there is a "reasonable probability that, but for counsel's

unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "The [Strickland] Court made clear that 'reasonable probability' is not the same as more likely than not; rather 'reasonable probability is a probability sufficient to undermine confidence in the outcome.'" State v. L.A., 433 N.J. Super. 1, 14 (App. Div. 2013) (quoting Strickland, 466 U.S. at 694). Applying that standard, there is a reasonable probability that the jury, properly instructed, would have concluded that the substantiality element was not satisfied, and opted instead to convict defendants of third-degree criminal restraint, N.J.S.A. 2C:13-2, or false imprisonment, N.J.S.A. 2C:13-3, a disorderly persons offense.

Therefore, we reverse the trial court's order as it relates to the alleged ineffective assistance of counsel pertaining to the definition of "substantial" in the kidnapping instruction. We remand for a hearing, at which trial and appellate counsel may be questioned about whether they had a compelling strategic or tactical reason for not objecting to the court's supplemental instruction, and for not raising the issue on direct appeal. See R. 3:22-10(b).

### C.

We briefly address defendants' claims that their trial and appellate counsel were ineffective by failing to request a specific

unanimity charge related to the asportation and confinement elements of kidnapping; and by failing to object to the jury's access in the jury room to the Calero video.

1.

We alluded to the specific unanimity issue in <u>Torres I</u>, slip op. at 41 n.9, noting that defendants had not raised it.  They now contend a specific unanimity charge was required — in other words, that all jurors must agree that the asportation element was satisfied, or all jurors must agree that the confinement element was satisfied — and their counsel were ineffective in failing to assert that position.

To provide effective assistance of counsel, an attorney is not obliged "to anticipate that an otherwise valid jury instruction would later be deemed improper . . . ."  <u>Funchess v. Wainwright</u>, 772 F.2d 683, 691 (11th Cir. 1985).  Although a creative advocate may offer novel legal theories, the constitutional right to effective assistance of counsel "does not require counsel to forecast changes or advances in the law . . . ."  <u>Lilly v. Gilmore</u>, 988 F.2d 783, 786 (7th Cir. 1993).  "[C]ounsel is normally not expected to foresee future new developments in the law . . . ."  <u>Nelson v. Estelle</u>, 642 F.2d 903, 908 (5th Cir. 1981).  Thus, courts "have rejected ineffective assistance claims where a defendant 'faults his former counsel not for failing to find existing law,

21

but for failing to predict future law' and have warned 'that clairvoyance is not a required attribute of effective representation.'" Bullock v. Carver, 297 F.3d 1036, 1052 (10th Cir. 2002) (quoting United States v. Gonzalez-Lerma, 71 F.3d 1537, 1542 (10th Cir. 1995)).

In view of these principles, we need not decide whether unanimity as to asportation or confinement is required by law. Trial and appellate counsel's failure to urge that position was not ineffective because we are aware of no case — and defendants cite none — that directly holds such unanimity is required; and the model jury charge does not adopt that view.[3] Rather, the model jury charge repeatedly utilizes the phrase "and/or" in discussing the asportation and confinement elements. See Model Jury Charge (Criminal), "Kidnapping (N.J.S.A. 2C:13-1(b)(1) to (3))" (instructing jurors to consider four factors to determine whether the "removal . . . and/or confinement . . . was substantial"); see also State v. R.B., 183 N.J. 308, 325 (2005) (stating that "insofar as consistent with and modified to meet the facts adduced at trial,

---

[3] Were unanimity required, the Supreme Court in Jackson arguably would have been unwilling to tolerate the uncertainty as to whether the jury in that case found asportation or confinement. See Jackson, 211 N.J. at 414 (affirming conviction although the Court could not "discern whether the jury based its verdict on the victim's removal by a 'substantial distance,' or his 'substantial confinement'").

model jury charges should be followed and read in their entirety to the jury"). The verdict sheet utilized "or," which correctly simplified the "and/or" phrasing, as no one argues that a unanimous jury must find both asportation and confinement.

In sum, the failure to raise the specific unanimity issue does not constitute ineffective assistance of counsel. A specific unanimity charge would have extended existing law, and revised the model charge.

2.

We next consider defendants' argument that their trial and appellate attorneys were ineffective because they failed to contend that the jury's unrestricted access to the Calero video violated State v. Burr, 195 N.J. 119, 134 (2008) (disapproving "allowing a jury to have unfettered access to videotaped witness statements" in the jury room during deliberations); see also State v. A.R., 213 N.J. 542, 560 (2013) (expressly disapproving "unfettered access by the jury to video-recorded statements of witnesses or a defendant during its deliberations").

"The danger posed is that the jury may unfairly emphasize . . . videotaped statements over other" evidence and testimony presented at trial. Burr, 195 N.J. at 134; see also A.R., 213 N.J. at 546. To combat any prejudice to the defense, the Court

required, among other precautions, "any playback of the videotape must occur in open court . . . ."  Burr, 195 N.J. at 135.

Here, the playback of the videotaped pretrial statement of defendants' assault victim did not occur in open court.  The jurors asked to review the statement, and were provided audio visual equipment to view the tape in the jury room.  Torres II, slip op. at 7-8, 16 n.6.  Defendants' trial attorneys did not object.  In fact, Esterlin's attorney consented to it.  Id. at 16 n.6.  Defendants' appellate attorneys did not raise the issue on direct appeal.

Defendants argue those decisions could not have been strategic, because the statement "dealt a fatal blow to the defense."  However, defendants did not provide a copy of the video for our review.  Conceivably, Calero's demeanor raised questions about his credibility.  Also, Calero contended, favorably to defendants, that Muniz was defendants' planned getaway driver, not their victim.  Torres I, slip op. at 9.  Perhaps it was a strategic decision to permit the jury unfettered access to Calero's recorded statement.

In any event, we need not decide whether defendants' attorneys performed deficiently on this score, because defendants have not demonstrated prejudice.  See State v. Gaitan, 209 N.J. 339, 350 (2012) (stating courts are permitted to "examine first whether a

24                                          A-4299-15T4

defendant has been prejudiced, . . . and if not, to dismiss the claim without determining whether counsel's performance was constitutionally deficient"). The potential that the jury gave undue weight to the recorded statement — the evil that the <u>Burr</u> and <u>A.R.</u> rule is designed to combat — was reduced by the complete playback of Calero's in-court testimony, which contradicted the recorded statement.

In sum, we affirm the denial of PCR on the issue of the jury's unfettered access to Calero's recorded statement.

D.

Defendants' remaining arguments lack sufficient merit to warrant discussion in a written opinion. <u>R.</u> 2:11-3(e)(2).

Affirmed in part. Reversed in part. Remanded for an evidentiary hearing on defendants' claims of ineffective assistance of trial and appellate counsel, limited to their failures with respect to the trial court's erroneous instruction on the meaning of "substantial."

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION