# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0283-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

T.A.M.,[1]

     Defendant-Appellant.

_____

Argued May 7, 2025 – Decided July 28, 2025

Before Judges Currier, Marczyk, and Torregrossa-O'Connor.

On appeal from the Superior Court of New Jersey, Law Division, Union County, Indictment No. 19-07-0456.

Rochelle Mareka Amelia Watson, Deputy Public Defender II, argued the cause for appellant (Jennifer Nicole Sellitti, Public Defender, attorney; Brian P. Keenan, Assistant Deputy Public Defender, of counsel and on the briefs).

---

[1]  We use initials and pseudonyms to protect the confidentiality of the victim. R. 1:38-3(c)(9), (12).

Milton S. Leibowitz, Assistant Prosecutor, argued the cause for respondent (William A. Daniel, Union County Prosecutor, attorney; Milton S. Leibowitz, of counsel and on the brief).

Appellant filed a pro se supplemental brief.

PER CURIAM

Defendant appeals from his convictions and sentence arising out of charges that he sexually assaulted his stepdaughter, C.W. He asserts the trial court made several evidentiary errors and mistakenly applied an aggravating factor during sentencing, and the prosecutor made improper statements in summation. Defendant further contends his counsel rendered ineffective representation. After careful review, we affirm the convictions but remand for a new sentencing hearing.

I.

Defendant was charged in an indictment with first-degree aggravated sexual assault, N.J.S.A. 2C:14-2(a)(1) (count one); second-degree sexual assault, N.J.S.A. 2C:14-2(b) (count two); and second-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a)(1) (count three).

Pretrial Hearing

Prior to trial the State moved to admit C.W.'s out-of-court statements and her video-recorded statement to the police under the tender years exception,

N.J.R.E. 803(c)(27). T.R. (Terri), a fifth-grade classmate of C.W., testified that C.W. told her that defendant had touched C.W. on her "boobs and . . . private part" and then C.W. started to cry. Terri told C.W. that she should speak to the school's guidance counselor.

C.W.'s fifth-grade homeroom teacher testified that on April 30, 2019, C.W. told her that defendant had touched her private parts. The teacher reported this information to the school's guidance counselor.

Detective Jennifer Smith of the Union County Prosecutor's Office testified that she interviewed C.W. on April 30, 2019. The interview was video recorded.

In a well-reasoned oral decision, the court found the teacher to be a credible witness, describing her as "clear, direct and firm in her testimony," with "a good recollection" of the conversation with C.W. at school. The court also found that Terri was a credible witness, stating:

> Her recollection of all the details of these conversations . . . with [C.W.] . . . was not perfect, but she was very sure that she was alone with [C.W.] when [C.W.] described what her father had been doing to her . . . . [Terri] was sincere, straight-forward, and largely consistent during her testimony.

The court also found Smith to be credible. The court concluded: "So looking at the totality of the circumstances I find that all three of the statements . . . [to

3

Smith, the teacher, and Terri] are . . . sufficiently trustworthy, so I do find that they are admissible under the tender years exception to the hearsay rules."

The court also found C.W.'s video-recorded statement to Smith was admissible. Defendant does not challenge that ruling.

Trial

In 2019, defendant and ten-year-old C.W. lived in a three-bedroom apartment with C.W.'s mother, Cathy, and C.W.'s five brothers. C.W. shared a bedroom with her seven-year-old brother TJ, while defendant shared another room with Cathy and the two youngest children. Cathy stated that defendant moved in with her, her older sons, and C.W., when C.W. was one year old. She said C.W. believed defendant was her father, and defendant treated her like his daughter.

C.W., then fourteen years old, testified at trial regarding two incidents of sexual abuse by defendant. She described an occasion when, after she had finished taking a shower, she could not find the clothes she had left outside the shower. She wrapped herself in a towel, and walked into Cathy's and defendant's bedroom, where she found her clothes. At this point, defendant walked up behind her, picked her up, and put her on the bed. He then took off her towel and touched her chest. Defendant told C.W. not to tell anyone or he would be

A-0283-22

in a lot of trouble. He stopped when there was a knock on the bedroom door. C.W. grabbed her clothes and ran into her room.

In a second incident, defendant and C.W. were watching a movie while sitting on a couch when defendant took C.W.'s pants off and began rubbing her vagina, including inserting his finger into it.

One day in school, C.W. told her friend Terri and her fifth-grade teacher about the two incidents. The teacher sent C.W. to the school's guidance counselor, who called Cathy and the police.

Terri testified that on April 30, 2019, while they were at school, C.W. told her that defendant had sexually assaulted her. The teacher also testified that C.W. asked to speak to her during school on April 30, 2019, and told her that defendant had been touching her inappropriately. When the teacher asked her where she was touched, C.W. told her that defendant put his hands down her pants and rubbed her chest. The teacher then called the guidance counselor, who called the police.

Smith testified that on April 30, 2019, she interviewed C.W. The video of the interview was played for the jury. In the interview, C.W. told Smith that "[m]ore than one time" defendant "would pick me up and then put me on my

A-0283-22

parents' bed and then take off my clothes and then that's when he would start touching me in the places that people are not supposed to touch girls."

C.W. also described the incident regarding the shower in her statement to Smith. She said she could not find the clothes she had left outside the shower. She wrapped herself in a towel and walked into her mother's and defendant's bedroom where she found her clothes. At this point, defendant walked up behind her, picked her up, and put her on the bed. He then took off her towel and touched her chest. Defendant told C.W. not to tell anyone or else he would be in a lot of trouble. C.W. said defendant also "tried to put his thing in [her] butt" while saying, "[d]on't ever let no boy do this to you." He stopped touching her when there was a knock on the bedroom door. C.W. grabbed her clothes and ran into her room. C.W. said defendant was wearing gray and black sweatpants with a Nike insignia on them.

In another incident, C.W. went into defendant's room to ask for a snack or to ask something about her baby brother. She said defendant lifted her up, put her on the bed, and closed the door. He then took off her pants and tried to put his penis inside the "middle part" of her vagina through a hole in his sweatpants. C.W. stated it felt "uncomfortable." Defendant told C.W. that he loved her more

6

than anyone else and that she was special. C.W. said defendant was wearing orange and blue sweatpants on that occasion.

In another incident, defendant tried to make C.W. touch his penis, which she described as "straight" and "hard." Defendant then opened her legs and started "sucking on" her breasts. C.W. also recounted defendant putting baby oil on his penis and on her "butt" and rubbing his penis against her "butt." When he heard someone coming, defendant told C.W. not to tell anyone.

According to C.W., similar incidents took place over "a year and a half," the last incident occurring "a few weeks" prior to the interview. At that time, defendant put her on the bed and "tried to lick down here," meaning her vagina. C.W. said defendant also tried to put his "peepee on [her] butt."

C.W. stated that the first person she spoke to about these incidents was her best friend Terri who told her she had to tell someone about it. C.W. then told her teacher.

After the interview with Smith, Cathy consented to a search of the residence where the officers recovered "pajama pants" and "track pants." One pair of pants was blue and orange while the other was black with a gray stripe. While in defendant's and Cathy's bedroom, Smith noticed a bottle of baby oil, which she seized as well.

Cathy testified that defendant was the father of the three younger boys. After C.W. made these allegations against defendant, and the family left the apartment, Cathy told C.W. that defendant was not her biological father.

C.W. was examined by a pediatrician at a child protection center who testified at the trial. C.W. told the doctor "she was sexually abused," by defendant who touched her chest and vagina. C.W. also said defendant's penis was hard and he rubbed it on the outside of her vagina and buttocks. She also reported that cunnilingus took place. The court found C.W.'s statements were admissible under N.J.R.E. 803(c)(4), the medical treatment exception to the rule against hearsay. Defendant does not challenge that ruling.

The jury found defendant guilty on all three counts. The court sentenced defendant to a forty-year prison term on count one, with an eighty-five percent parole disqualifier pursuant to the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. On counts two and three, defendant was sentenced to concurrent eight-year terms, also subject to NERA.

## II.

Defendant raises the following points in his counselled brief:

> POINT I
> THE TRIAL COURT'S MULTIPLE ERRORS
> INVOLVING TENDER YEARS EVIDENCE

DEPRIVED [DEFENDANT] OF HIS RIGHTS TO DUE PROCESS AND A FAIR TRIAL.

A. The Admission of Repetitive, Corroborative Hearsay Statements Admitted Pursuant to the Tender Years Exception was Unduly Prejudicial, Cumulative, and Requires Reversal.

B. The Trial Court Erred in Drawing Attention to C.W.'s Tender Years Video in its Final Instruction to the Jury, and in Allowing the Jury to Rewatch the Video During Deliberations.

POINT II
THE TRIAL COURT DEPRIVED [DEFENDANT] OF HIS RIGHT TO PRESENT A DEFENSE WHEN IT PRECLUDED HIS ONLY WITNESS FROM TESTIFYING.

POINT III
THE TRIAL COURT ERRED IN DENYING [DEFENDANT]'S MOTION FOR A MISTRIAL AFTER THE PROSECUTOR MENTIONED AN INCIDENT WHERE THE VICTIM WAS FOUND BY HER MOTHER CRYING IN THE SHOWER THAT WAS NOT REVEALED TO THE JURY DURING THE TRIAL.

POINT IV
THE PROSECUTOR'S MISCONDUCT IN IMPROPERLY BOLSTERING C.W.'S CREDIBILITY MISREPRESENTING THE RECORD, AND IMPLYING THE LEAD DETECTIVE HAD SUPERIOR KNOWLEDGE OF [DEFENDANT]'S GUILT DURING SUMMATION DEPRIVED [DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL.

POINT V
THE ERRONEOUS ADMISSION OF PRIOR BAD
ACTS EVIDENCE THROUGH C.W.'S RECORDED
STATEMENT TO THE POLICE DEPRIVED
[DEFENDANT] OF HIS RIGHT TO A FAIR TRIAL.

POINT VI
THE TRIAL COURT ERRED IN FAILING TO
DISMISS A JUROR WHO ADMITTED TO
DO[Z]ING AND RESTING HER EYES DURING
THE TRIAL.

POINT VII
THE TRIAL COURT'S ACCUMULATED ERRORS
DEPRIVED [DEFENDANT] OF HIS RIGHT TO A
FAIR TRIAL.

POINT VIII
DEFENSE COUNSEL WAS INEFFECTIVE, AND
THE TRIAL COURT ERRED IN FAILING TO
ACCURATELY ADVISE [DEFENDANT] OF HIS
MAXIMUM SENTENCING EXPOSURE PRIOR TO
REJECTING THE STATE'S PLEA OFFER AND
PROCEEDING TO TRIAL.

POINT IX
THE SENTENCING COURT DOUBLE COUNTED
THE ELEMENTS OF THE OFFENSE IN FINDING
AGGRAVATING FACTOR TWO AND FAILING TO
MERGE CONVICTIONS.

In a supplemental self-represented brief, defendant contends:

POINT I.
THE PROSECUTION COM[M]I[T]TED
PROSECUTORIAL MISCONDUCT WHEN SHE
TOLD THE JURY THAT PRIOR TO [C.W.]
TESTIMONY, SHE WAS CRYING IN THE SHOWER

10

AND HER MOTHER HEARD IT; THE PROSECUTION'S COMMENTS DURING SUMMATIONS IMPLIED THAT [C.W.] MIGHT [HAVE] TOLD HER MOTHER ABOUT DEFENDANT'S ALLEGED SEXUAL ABUSE TOWARDS HER. EVEN THOUGH THERE WAS NO EVIDENCE PRESENTED TO THE JURY THAT [C.W.] WAS EVER CRYING IN THE SHOWER. THE COMMENTS INFRINGED ON DEFENDANT[']S RIGHTS TO A FAIR TRIAL BY AN IMPARTIAL JURY. U.S. Const. amend. V[,] VI[,] XIV; N.J. Const. art. 1 [¶] 10.

POINT II.
THE COURT ERRED WHEN HE DENIED DEFENDANT'S MOTION FOR A MISTRIAL, AND INSTEAD, GAVE A CURATIVE INSTRUCTION TO THE JURY. WHERE THE CURATIVE INSTRUCTION DID NOT NEUTRALIZE THE PREJUDICIAL REMARKS CAUSED BY THE PROSECUTION

Tender Years Evidence

We begin with Point I, considering whether the court erred in admitting multiple out-of-court statements made by C.W. under the tender years exception, Rule 803(c)(27). Defendant contends the court should have also determined whether the statements were admissible under N.J.R.E. 403 because C.W. was nearly twelve years old when the incidents occurred, and fourteen when she testified. Additionally, defendant asserts C.W.'s statements to her teacher and

11

Terri should have been excluded as unduly repetitive, particularly in light of C.W.'s in-court testimony.

A trial court's determination that a child's statement meets the trustworthiness requirement of Rule 803(c)(27) should not be disturbed absent an abuse of discretion. State v. P.S., 202 N.J. 232, 250 (2010). We will only intervene if the determination is clearly mistaken. Id. at 250-51.

Rule 803(c)(27) provides, in relevant part, that statements made by a child under the age of twelve relating to sexual misconduct committed against that child are admissible if "the court finds, in a hearing conducted pursuant to Rule 104(a), that on the basis of the time, content and circumstances of the statement there is a probability that the statement is trustworthy . . . and . . . the child testifies at the proceeding . . . ."

In determining whether a statement is trustworthy, a court must consider the totality of the circumstances. P.S., 202 N.J. at 249. Factors relevant to the evaluation of out-of-court statements include spontaneity, consistent repetition, the mental state of the child, use of terminology unexpected of a child of a similar age, and lack of motive to fabricate. Ibid. (citing Idaho v. Wright, 497 U.S. 805, 821-22 (1990)).

A-0283-22

In addition, as our Supreme Court has stated: "[I]n considering the admission into evidence of several repetitive corroborative statements under the tender years exception, a trial court should be cognizant of its right under N.J.R.E. 403, to exclude evidence if it finds in its discretion, that the prejudicial value of that evidence substantially outweighs its probative value." State v. D.G., 157 N.J. 112, 128 (1999). "[T]rial courts in a proper case must serve as gatekeepers when repetitive corroborating hearsay evidence is proffered pursuant to N.J.R.E. 803(c)(27)." State v. Smith, 158 N.J. 376, 391 (1999) (citation reformatted).

Under Rule 403, relevant evidence may be excluded if its probative value is substantially outweighed by, among other things, the risk of undue prejudice, confusion of the issues, misleading the jury or the needless presentation of cumulative evidence. The court's determination will be upheld unless it represents a "clear error of judgment" or it results in "a manifest denial of justice." State v. Cole, 229 N.J. 430, 453 (2017) (first quoting State v. Koedatich, 112 N.J. 225, 313 (1988); and then quoting State v. Carter, 91 N.J. 86, 106 (1982)).

We are satisfied the trial court did not abuse its discretion by admitting the challenged evidence under Rules 802(c)(27) and 403. C.W.'s conversations

13

with her teacher and Terri supported the credibility of C.W.'s accusations, particularly since they were the first time C.W. disclosed the alleged abuse. In addition, the conversations with Terri and the teacher established why the police were called to investigate the allegations.

Moreover, the defense used the different statements in summation to suggest inconsistencies in C.W.'s testimony:

> [W]e need to think very carefully about [C.W.'s] words, because they are the only thing that the State has. Are her words consistent? Or do they change? Do they alternate from situation to situation depending on who[] she's talking to. Were they consistent between what she said to T[erri], and what she said to Detective Smith? They certainly did not appear that way to me. The disclosure that she makes during the statement to Detective Smith seems to me to be vastly different than what she said to T[erri] or what she said to [her teacher]. And all that seems to be very different than what she said when she testified before all of you.

The prejudicial value of the evidence did not substantially outweigh its probative value. The trial court observed the witnesses, found them to be credible and determined the statements were trustworthy. The court did not abuse its discretion by admitting the corroborative evidence under the tender years exception.

14

C.W.'s Video Statement

In point I.B., defendant contends the court erred in its final jury instructions regarding the video of C.W.'s interview and in permitting the jury to rewatch the video during their deliberations. We are unpersuaded.

At the end of the jury charge, the court told the jury that C.W.'s video interview was admitted into evidence and stated,

> so we're not going to send it in. . . . You have it available to you. And the reason I'm not going to send in the recording is because if you want to see it, part of it, all of it, or none of it, completely up to you, but if you want to see any of it, it has to be done in open court . . . . So if you want to see [the] recorded statement . . . just write that request on a note.

In a side bar conversation, defense counsel referenced State v. Burr,[2] asserting if the jury sought to review the recorded statement, the court had to first inquire whether the in-court testimony was sufficient. After reviewing the case law, the court agreed if the jury requested to watch the recorded statement video, it would first offer the in-court testimony. However, the court did not find it necessary to give the jury any further instructions on the issue at that point, but rather a better course was to wait to see if the jury made the request. Defense counsel agreed no further instruction was necessary at that time.

---

[2]  State v. Burr, 195 N.J. 119 (2008).

A-0283-22

Defendant does not present any reasons for the allegations of error in the court's instruction, much less plain error as required under Rule 2:10-2. Therefore, we find no merit to the unsupported argument that the court erred in the initial instruction.

Defendant does challenge the procedure the court used when the jury requested to watch the video and review a copy of the transcript during its deliberations. After discussion with counsel, the judge sent a note to the jury asking whether it would be satisfied with a readback of C.W.'s trial testimony rather than replaying the video. Defense counsel agreed with this approach. The jury responded that it wanted to watch the video and review a transcript. Defense counsel and the State then agreed it was appropriate for the court to inquire whether the jury wanted to watch the entire video or just a portion of it. The jury responded by requesting to see the entire video.

Defendant objected to the entire video being played, asserting it was prejudicial to him. The court discussed Rule 403 and asked defense counsel if he had any suggestions on how "to minimize the prejudice." Defense counsel then stated he did not want the jury to watch the recorded video statement at all.

After a lengthy discussion and further analysis of Burr, the court overruled the objection, stating it would permit the jury to watch the entire video and it

 A-0283-22

would provide the jury with a readback of C.W.'s entire trial testimony. The court stated:

> [T]here's some prejudice to . . . defendant, but the probative value of the statement I find outweighs the prejudice to . . . defendant. . . . So there is some prejudice . . . to . . . defendant and I understand that there are a lot of details given by [C.W.] that she said in response to . . . direct or cross [that] she couldn't remember. . . . But I do find that the replaying of the statement . . . to be reasonably necessary to the jury's deliberations.
>
> And to minimize . . . the prejudice [the court] is going to require the reading back . . . of the direct, cross, redirect and recross of . . . [C.W.] . . . .

The video was played for the jury the following day. At the conclusion, the court instructed the jury: "In your deliberations you are instructed to consider all of the evidence presented and not to give any undue weight to the statement you have just seen played back." C.W.'s entire trial testimony was then read for the jury.

In <u>Burr</u>, the trial court granted the jury's request, over the defendant's objection, to view the child's video interview during their deliberations. 195 N.J. at 132. The defendant asserted this was an abuse of discretion and prejudicial. <u>Ibid.</u> The Supreme Court stated:

> Unlike a demonstrative exhibit, the videotape contains hearsay statements offered for the truth of the matter

asserted. Moreover, the videotape is powerful evidence for the jury to see again, if it is not placed into context. We therefore share the Appellate Division panel's concern . . . [about] allowing a jury unrestricted access to videotaped [witness statements] during deliberations. The danger posed is that the jury may unfairly emphasize [the victim's] videotaped statements over other testimony presented at trial, including her own cross-examination.

[Id. at 134.]

Therefore, the Court held that if a request is made by a jury to replay a video-recorded pretrial interview that has been introduced into evidence, the trial court must follow the "precautionary procedures" adopted in State v. Michaels, 264 N.J. Super. 579 (App. Div. 1993), aff'd, 136 N.J. 299 (1994). Burr, 195 N.J. at 134. The Court established the following process:

[I]f . . . the trial court is faced with a request by the jury to have a replay of the videotaped pretrial interview of [the victim], the court first should inquire of the jury whether it would be satisfied with a readback of [the victim's] testimony. If the jury persists in its request to view the videotape again, then the court must take into consideration fairness to the defendant. The court must determine whether the jury must also hear a readback of any direct and cross-examination testimony that the court concludes is necessary to provide the proper context for the video playback. . . . [T]he court retains the ultimate discretion to deny the playback request, although that would require a showing that the consequential prejudice to the defendant from the playback could not be ameliorated through other means. And, finally, any playback of the videotape

18

must occur in open court, along with the readback of related testimony that the court shall require.

[Id. at 135 (footnote omitted).]

The trial court gave considerable attention to the jury's request and defendant's objection and thereafter followed the dictates of Burr to the letter. Burr explicitly cited a readback of trial testimony as a way to cure any prejudice. Therefore, the court's decision to permit the jury to view the video statement followed by a readback of the trial testimony does not constitute an abuse of discretion.

Precluded Testimony

In point II, defendant argues the court erred in not permitting the defense to question defendant's mother about a particular conversation she had with C.W. before the allegations of abuse arose. We discern no abuse of discretion in the court's ruling.

After the State completed its case, defense counsel told the court he wanted to call defendant's mother to testify regarding a conversation she claimed to have had with C.W. several months before C.W. alleged the sexual abuse. According to counsel, C.W. asked her grandmother whether C.W. looked like defendant. Counsel stated C.W. might have been questioning whether defendant was her father, and the testimony could support defendant's claim that C.W. had

19

fabricated the allegations because she suspected defendant was not her biological father.

In a thoughtful analysis, the court ruled the testimony inadmissible because it lacked relevance, would cause the jury to speculate, and create confusion among them. The court stated: "It's going to call for them to jump several steps to some kind of inference that I don't think the question leads to. Do I look like my dad? I think people with children probably have had those questions posed by their own children to themselves." The court added:

> [T]here is absolutely nothing I can think of, zero, in either [C.W.'s] testimony or her mother's that would even lead to the most generous of inferences that the question if it was posed by [C.W.], could somehow be interpreted as [C.W.] knew that [defendant] was her stepfather and not her biological father.

Even if the evidence was relevant, the court stated it would exclude it under Rule 403 because its probative value was substantially outweighed by the risk that it would confuse the issues and mislead the jury.

We review evidentiary rulings under an abuse-of-discretion standard and will defer to the trial court's decision unless it was clearly erroneous. State v. Sims, 250 N.J. 189, 218 (2022).

A trial court is afforded broad discretion in determining whether evidence is relevant. Burr, 392 N.J. Super. at 560. "Relevant evidence" is defined by

N.J.R.E. 401 as evidence "having a tendency in reason to prove or disprove any fact of consequence to the determination of the action." "Stated otherwise, relevant evidence has probative value, which is the tendency of the evidence to establish the proposition that it is offered to prove." State v. Wilson, 135 N.J. 4, 13 (1994). "The inquiry is 'whether the thing sought to be established is more logical with the evidence than without it.'" State v. Buckley, 216 N.J. 249, 261 (2013) (quoting State v. Coruzzi, 189 N.J. Super. 273, 302 (App. Div. 1983)).

Defendant sought to introduce a conversation in which C.W. asked her grandmother whether she looked like defendant. There was no evidence in the record that C.W. knew or suspected that defendant was not her biological father at the time. As the trial court found, the proffered testimony had no relevance to the motive to fabricate claimed by defendant. Consequently, it did not have a "tendency in reason to prove" a "fact of consequence." Therefore, the court did not err in finding the evidence both not relevant and excludable under Rule 403.

Mistrial Motion

In the counselled and self-represented briefs, defendant contends the court erred in denying his motion for a mistrial after the prosecutor, in summation, referred to an incident that was not evidence introduced at trial.

21

In her summation, the prosecutor referred to an incident where C.W. was "crying in the shower . . . . An [eleven]-year-old [wa]s crying in the shower and her mother s[aw] this. It happened about a month before she starts." At this point, defense counsel objected, asserting that although that evidence had been introduced at the pretrial Rule 104 hearing, it had not been introduced at trial. The court sustained the objection and defendant moved for a mistrial. The court denied the motion, stating:

> [A mistrial] is an extraordinary remedy. It was clearly a misstatement . . . . It was not much information at all. There was a reference to [C.W.] in the shower crying, an [eleven] year old, and her mother sees that. . . . I am going to instruct the jury that it was a misstatement . . . . They are to completely ignore it. Not pay any attention to it at all. . . .
>
>     . . . [T]he fact that there's a child crying in the shower, the mother sees that, it's really not related to anything.

The court gave the jury the following curative instruction, using language suggested and agreed to by defense counsel:

> I am striking a portion of [the prosecutor's] comments to you and that was right before there was an objection and we took a break. There was absolutely no testimony in this case about an incident where [C.W.] was crying in the shower. So the portion of [the prosecutor's] comments to you referencing that incident is struck. It was a misstatement, an error . . . . And I'll just remind you, when I say strike, don't think about it.

22

It's like it never happened. . . . Put it out of your mind, that part I just said is to be struck. Out of your minds.

We will not disturb a trial court's ruling on a motion for a mistrial absent an abuse of discretion that results in a manifest injustice. State v. Jackson, 211 N.J. 394, 407 (2012). Whether the alleged error can be ameliorated by a curative instruction is a part of that discretion:

> The decision on whether inadmissible evidence is of such a nature as to be susceptible of being cured by a cautionary or limiting instruction, or instead requires the more severe response of a mistrial, is one that is peculiarly within the competence of the trial judge, who has the feel of the case and is best equipped to gauge the effect of a prejudicial comment on the jury in the overall setting.
>
> [State v. Winter, 96 N.J. 640, 646-47 (1984).]

The same deference applies to the curative instruction given in lieu of a mistrial. Id. at 647.

The decision to issue a curative instruction and deny a mistrial depends on three factors: "the nature of the inadmissible evidence the jury heard and its prejudicial effect," whether the instruction was given in a timely fashion, and whether the evidence created a real possibility that it "'led the jury to a result it otherwise might not have reached'" otherwise. State v. Herbert, 457 N.J. Super. 490, 505-07 (2019) (quoting Winter, 96 N.J. at 647). The statement by the

23

prosecutor that C.W. was crying in the shower was brief and not tied to any of the other evidence introduced at trial. The court immediately gave a curative instruction. We are satisfied the fleeting statement did not lead the jury to a result it otherwise might not have reached. Therefore, the court did not abuse its discretion in denying the motion for mistrial.

As to the curative instruction itself, defendant, in his self-represented brief, argues that the instruction was inadequate. In support, he relies on Herbert, where the State's police witness referred to the defendant's gang membership, a fact not in evidence. Id. at 494, 499. The trial court denied the defendant's motion for a mistrial and gave a curative instruction. In the instruction, the court stated there was no evidence that gangs were involved, and that the detective's statement was unintentionally made. Id. at 500.

On appeal, we concluded that the instruction was inadequate to cure the prejudice caused by the gang reference. Id. at 494-95. We found the instruction "fail[ed] to clearly and sharply address the prejudicial aspect of the inadmissible evidence," noting the instruction "did not directly address" the defendant's gang membership, and that the reference that the remark was "unintentional" was not supported and "bolstered the detective's credibility in the juror's minds." Id. at 508-11. We stated, in sum, that "[a]s a result of these deficiencies, the risk of

24

the jury's noncompliance with the court's instructions was intolerably high" because "[t]he instructions did not fully and clearly address the prejudicial aspects of the testimony." Id. at 511-12.

The prosecutor's comment in summation here regarding a child crying in the shower is not remotely akin to the police witness's reference to a defendant's gang membership in Herbert. The gang reference in Herbert "filled a hole in the State's case," namely, the defendant's motive for committing the homicide. Id. at 509. C.W.'s crying in the shower was not connected to any other evidence presented at trial. The court quickly sustained defendant's objection and used the language suggested by defense counsel in the subsequent curative instruction. Defendant does not contend anything said in the curative instruction was inaccurate, as found in Herbert. We discern no abuse of discretion in the issuance of the curative instruction.

Prosecutorial Misconduct

In point IV, defendant contends, for the first time on appeal, that various remarks made by the prosecutor in summation constituted prosecutorial misconduct and therefore warrant reversal of the jury's verdict. Because defendant did not object to the statements, we review them for plain error, an error "clearly capable of producing an unjust result." R. 2:10-2.

While prosecutors are afforded considerable leeway in their summation, their comments should be "reasonably related to the scope of the evidence presented." State v. Frost, 158 N.J. 76, 82 (1999). As long as the prosecutor stays within the evidence and the reasonable inferences therefrom, and does not refer to extraneous matters, there is no error. State v. Williams, 244 N.J. 592, 607 (2021). Even when an improper remark is made, reversal is not warranted unless the comment was so egregious as to deprive the defendant of a fair trial. State v. McGuire, 419 N.J. Super. 88, 139 (App. Div. 2011). Generally, as here, when no objection is made to the prosecutor's remarks, the remarks will not be deemed prejudicial. Frost, 158 N.J. at 83-84.

Defendant posits the following statement was improper because the prosecutor referred to defendant as "the offender."

> Detective Smith had very limited information when she began her interview . . . . What information did she know? She knew [C.W.'s] name, she knew her age, she knew the general accusation was sexual assault, and she knew who the offender was. She knew the offender was [C.W.'s] father. That's all the information she knew . . . . [T]hat means that all the information that you get about this case came from [C.W.'s] mouth.

We discern no prejudice in this statement. The prosecutor was using the term to describe defendant as the person C.W. identified as committing sexual offenses. Moreover, it was no secret to the jury that the State believed and

argued that defendant was the offender of the charged crimes. Therefore, the reference did not constitute plain error.

Defendant also contends the prosecutor improperly conflated the orange and blue pants with the gray and black pants. The prosecutor was discussing the hole in defendant's sweatpants that gave him "easy access" to C.W. She stated:

> [C.W.] described [defendant as wearing] loose pants. She later also further describes the pants as blue and orange, and later she used the words Nike armor, but the pants are loose. . . . The pants g[a]ve the defendant easy access. . . . If you look in the center of State Exhibit 56, now, the pants are in evidence . . . there is a button in the middle of the pants, . . . and that button is something that can be opened or closed. Now, to [C.W.] describing it, she saw that he had put his penis through that hole. . . . How would she ever know that. She's an [eleven][-]year[-]old girl. . . . [T]hose pajama pants . . . g[ave] him easy access. He is able to reset himself quickly, if need be.

It is not clear which pants the prosecutor was discussing. But even if she conflated the two, the jury was instructed: "Regardless of what counsel said . . . re[garding] the evidence in the case, it is your recollection of the evidence that should guide you as judges of the facts. . . . [S]ummations of counsel are not evidence and must not be treated as evidence." Thus, any mistaken description of the pants was cured by this instruction and did not rise to plain error.

27

In addition, defendant challenges the prosecutor's statement that C.W.'s teacher said C.W. was "wringing her hands" and was "very timid and shy" during their conversation. The prosecutor added: "[I]f we're all here for a lie, you can't fake that. You can't fake that demeanor . . . ." Defendant asserts this was improper bolstering of a witness.

It is improper for a witness to attempt to bolster the credibility of another witness when the case requires the jury's assessment of the veracity of the defendant or of the witness. State v. R.K., 220 N.J. 444, 460-61 (2015). A prosecutor likewise may not express a personal belief or opinion as to the credibility of a State witness. State v. Staples, 263 N.J. Super. 602, 605 (App. Div. 1993).

Here, the prosecutor did not express a personal belief as to C.W.'s credibility. Rather, she commented on C.W.'s nervous demeanor, which was part of the record. This was fair comment on C.W.'s state of mind at the time she approached her teacher. Regardless, we are satisfied the comment did not raise reasonable doubt as to whether it led the jury to a verdict it might not otherwise have reached. State v. Macon, 57 N.J. 325, 335-36 (1971).

Finally, defendant challenges the prosecutor's remark that C.W. was "forthcoming" in her interview with Smith. The prosecutor stated: "There

wasn't a lull in the conversation. There was back and forth. Every question got a response because [C.W.] . . . had lived it." Again, this was fair comment on C.W.'s demeanor during questioning and was not improper. The challenged prosecutorial remarks in summation did not constitute plain error.

Prior Bad Act

In point V, defendant asserts, for the first time on appeal, the court erred by not excluding under N.J.R.E. 404(b) that portion of C.W.'s video recorded statement to Smith alleging defendant had hurt one of the other children in the household. Specifically, defendant now objects to the following colloquy:

> [C.W.]: [S]ometimes . . . [defendant is] so mean to [my three-year-old brother] and I remember last time [my brother] was crying because he was on me. [Defendant] said don't treat him like a baby, so then that's when he got him off my lap and got him milk and told him [to] lay down and I think he push[ed] his head.
>
> DETECTIVE SMITH: He pushed his head?
>
> [C.W.]: Like this.
>
> DETECTIVE SMITH: Aww. Okay, and did it hurt him?
>
> [C.W.]: Yes. He started crying.
>
> DETECTIVE SMITH: He started crying. And is he okay now?
>
> [C.W.]: Yes.

Defendant did not object to these remarks when the statement was admitted into evidence. Therefore, we review for plain error. R. 2:10-2.

Generally, "evidence of other crimes, wrongs, or acts is not admissible to prove a person's disposition in order to show that on a particular occasion the person acted in conformity with such disposition." N.J.R.E. 404(b). To be admissible, such evidence must be relevant to a material issue, be similar in kind and reasonably close in time to the offense charged, be clear and convincing, and its probative value must not be outweighed by its apparent prejudice. State v. Cofield, 127 N.J. 328, 338 (1992).

While C.W.'s allegation does not likely satisfy the Cofield prongs, it was not clearly capable of producing an unjust result. It was an isolated comment in a lengthy statement. The comment was not referenced again in the testimony or prosecutorial argument. Therefore, defendant has not demonstrated the statement was clearly capable of producing an unjust result.

Juror Inquiry

In point VI, defendant contends the court erred by failing to replace a juror who admitted to "resting her eyes" during the trial. Because the court properly questioned the juror and defense counsel agreed the juror did not need to be excused, we discern no abuse of discretion.

After C.W.'s video interview was played for the jury,[3] the court received a note from one of the sheriff's officers indicating that Juror No. 1 may have been sleeping. The officer said the juror was looking down with her eyes closed for five to ten seconds. During the remainder of the time the juror's eyes were open.

The court questioned the juror, who denied sleeping or dozing during the video. She said at some point she looked down at the transcript she was holding. During the questioning Juror No. 1 raised on her own that she briefly rested her eyes the previous day during C.W.'s testimony. The juror stated that although she closed her eyes, she could hear what was being said and that she "didn't miss anything." She repeated C.W.'s testimony to reflect she had heard it. Upon completion of the questioning, counsel both advised the court they did not want to excuse the juror.

Defense counsel did not want the court to excuse Juror No. 1; accordingly, defendant should be prevented from raising this issue on appeal under the invited error doctrine. Under that doctrine, when a defendant asks the court to "take his proffered approach" and the court does so, "relief will not be forthcoming on a

---

[3] Each juror was also given a transcript of the statement.

claim of error by that defendant." State v. Jenkins, 178 N.J. 347, 358 (2004).

Nevertheless, for the sake of completeness, we will address the issue.

A trial judge's decision whether to remove a juror is reviewed for abuse of discretion. State v. R.D., 169 N.J. 551, 559-60 (2001). In State v. Mohammed, the Supreme Court provided instruction for a trial court to use in the event of an "inattentive" or sleeping juror:

> When it is alleged that a juror was inattentive during a consequential part of the trial, if the trial court concludes, based upon personal observations explained adequately on the record, that the juror was alert, the inquiry ends. If the judge did not observe the juror's attentiveness, the judge must conduct individual voir dire of the juror; if that voir dire leads to any conclusion other than that the juror was attentive and alert, the judge must take appropriate corrective action.
>
> [226 N.J. 71, 75 (2016).]

This procedure was followed by the trial judge. Defendant does not argue the court did not follow the Mohammed framework but rather asserts the court came to the incorrect conclusion. We disagree. The court questioned the juror, accepted her explanation, and counsel requested the court retain the juror. Defendant has not demonstrated an abuse of discretion.

Ineffective Assistance of Counsel

In point VIII, defendant contends he was denied the effective assistance

32

of counsel because his attorney (and the court) failed to accurately inform him of the length of the sentence he could receive if convicted on the aggravated sexual assault count when he was deciding whether to accept the State's plea offer.

To establish a prima facie case of ineffective assistance of counsel, the defendant must show that "counsel's performance was deficient," and that "but for counsel's unprofessional errors, the result of the proceeding would have been different." State v. Fritz, 105 N.J. 42, 52 (1987) (quoting Strickland v. Washington, 466 U.S. 668, 687, 694 (1984)).

Our Supreme Court "ha[s] expressed a general policy against entertaining ineffective-assistance-of-counsel claims on direct appeal because such claims involve allegations and evidence that lie outside the trial record." State v. Preciose, 129 N.J. 451, 460 (1992). Here, there is no evidence regarding the discussions between defendant and his attorney regarding a plea deal. Because the trial record does not clearly disclose all the facts necessary to evaluate defendant's contention, the ineffective assistance of counsel claim cannot be resolved in this appeal. See State v. Castagna, 187 N.J. 293, 316 (2006) (ineffective assistance claim should have been brought in a post-conviction relief petition because the Court could not determine whether the defendant

agreed with his attorney's trial strategy). Defendant may present this claim by way of a post-conviction relief petition, if he chooses.

Sentencing

In point IX, defendant argues his sentence should be vacated and remanded for a new sentencing hearing because the court improperly counted C.W.'s age, an element of the aggravated sexual assault offense, as an aggravating factor. He also contends the court erred in not merging the second-degree sexual assault conviction into the first-degree aggravated sexual assault conviction. We agree the court erred in applying aggravating factor two, requiring a new sentencing hearing. However, the court did not err in not merging the sexual assault convictions as they involved separate acts.

In sentencing defendant, the court found aggravating factors two (gravity and seriousness of the harm inflicted on the victim), N.J.S.A. 2C:44-1(a)(2); three (the risk of re-offense), N.J.S.A. 2C:44-1(a)(3); six (the extent of defendant's prior record), N.J.S.A. 2C:44-1(a)(6) and nine (the need to deter defendant and others), N.J.S.A. 2C:44-1(a)(9). It also found mitigating factor seven (defendant had led a law-abiding life for a substantial period of time), N.J.S.A. 2C:44-1(b)(7). The court concluded the aggravating factors substantially outweighed the sole mitigating factor. As stated, it sentenced

defendant on count one to forty years' imprisonment, subject to NERA, and concurrent eight-year terms on counts two and three.

In reviewing a sentence, we must determine whether the findings of fact on the aggravating and mitigating factors were based on competent and credible evidence in the record, whether the court applied the correct sentencing guidelines enunciated in the Criminal Code, and whether the application of the facts to the law constituted such an error of judgment as to shock the judicial conscience. State v. Roth, 95 N.J. 334, 363-65 (1984).

The Court has instructed that "established elements of a crime for which a defendant is being sentenced should not be considered as aggravating circumstances in determining that sentence." State v. Kromphold, 162 N.J. 345, 353 (2000) (citing State v. Yarbough, 100 N.J. 627, 633 (1985)). "Where an essential element of a crime is a specific fact . . . that element may not be used as an aggravating factor to impose a custodial sentence that is longer than the presumptive term or to impose a period of parole ineligibility." State v. Link, 197 N.J. Super. 615, 620 (App. Div. 1984).

Defendant claims such "double counting" occurred with respect to aggravating factor two, which states:

> The gravity and seriousness of the harm inflicted
> on the victim, including whether or not the defendant

> knew or reasonably should have known that the victim of the offense was particularly vulnerable or incapable of resistance due to advanced age, ill-health, or extreme youth, or was for any other reason substantially incapable of exercising normal physical or mental power of resistance . . . .
>
> [N.J.S.A. 2C:44-1(a)(2).]

In State v. C.H., 264 N.J. Super. 112, 140 (App. Div. 1993), we held that the sentencing court erred in applying aggravating factor two because the age of the victim, eight years old, was an element of the aggravated sexual assault offense. Similarly, here, the court relied on C.W.'s age in applying aggravating factor two, stating: "This victim was extremely youthful. She was . . . [ten] or [eleven] at the time. That is certainly an applicable factor." Therefore, the court erred by engaging in "double counting."

We then must consider whether that error warrants a remand for resentencing. In C.H., we found that a remand was not warranted because the trial judge "did not apply a sentence beyond the presumptive term." Id. at 140-41. However, here, the court did sentence defendant on the first-degree aggravated sexual assault conviction beyond the presumptive term. Therefore, we are constrained to remand for a new sentencing hearing, eliminating the finding of aggravating factor two.

We do not discern any error in the court's determination not to merge the aggravated sexual assault and sexual assault convictions. The court stated: "[T]hey were distinct acts, not overlapping acts, performed separately by [defendant] on the victim, not all at one time . . . ." Referring to the touching that led to the count two conviction, the court stated: "That was an independent act of sexual assault, sexual contact on a different occasion." Similarly, as to the penetration of C.W.'s vagina and the cunnilingus, the court found they were "completely separate act[s] of . . . aggravated sexual assault"

In deciding whether convictions should be merged, our courts follow a "flexible approach" focusing on the elements of the crime and the Legislature's intent in creating them, and on "the specific facts of each case." State v. Brown, 138 N.J. 481, 561 (1994), overruled on other grounds by State v. Cooper, 151 N.J. 326 (1997) (quoting State v. Cole, 120 N.J. 321, 327 (1990)). "The overall principle guiding merger analysis is that a defendant who has committed one offense 'cannot be punished as if for two.'" Ibid. (quoting State v. Miller, 108 N.J. 112, 116 (1987)). This approach entails

> analysis of the evidence in terms of, among other things, the time and place of each purported violation; whether the proof submitted as to one count of the indictment would be a necessary ingredient to a conviction under another count; whether one act was an integral part of a larger scheme or episode; the intent of

37

the accused; and the consequences of the criminal standards transgressed.

[State v. Davis, 68 N.J. 69, 81 (1975).]

The facts presented here did not constitute a single episode where separate acts occurred but rather involved distinct acts of sexual assault. As we stated in State v. Fraction, 206 N.J. Super. 532, 540 (App. Div. 1985):

> [W]e would be myopic were we to ignore the fact that the victim suffered separate and distinct indignities. Each assault can reasonably be considered a separate event deliberately undertaken and warranting separate prosecution and conviction. Defendant deliberately subjected the victim to repeated and different acts of sexual abuse.

The trial court properly declined to merge the aggravated sexual assault and sexual assault convictions.

Any remaining arguments, whether raised in defendant's counselled or self-represented brief, lack sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed in part, reversed and vacated in part. We remand solely for a new sentencing hearing in accordance with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

38

A-0283-22